Reese, J.
delivered'the opinion .of the court.
This record presents a question of sanity or insanity upon an issue of devisavit vel non. The paper presented as the last will and testament of James Pettitt, bears date on the 10th February, 1842. It has no attesting witness, but is well proved, to be altogether in the hand writing of the deceased. It was found in a trunk where specie was kept, and where there were other valuable papers." It bore date six days only before the death of Pettitt, and was no doubt prepared and deposited, where it might be found, in view of that event, then, if not earlier, meditated by the deceased. He died by suicide. He had once lived on the Georgia road and kept entertainment for travellers, but he had been for some time living in retirement, at a place called Fort Morrow, with no family about him but his' slaves. His family had never lived with him in this county. From some of the testimony, it seems that he had become considerably deaf, and had a pain in his back; and his health began to he impaired. Some years before, he proposed 'to one witness *192 to sell his negroes, saying he wanted to travel. While talking on this subject, witness thought he had singular actions, a strange stare, and a wild look. In October, 1841, he accompanied, on horse back, another witness, who lived some sixty miles from him, a little distance from his house, having previously told him that be had something important to communicate, and when they got to a secluded place, he seemed to hesitate for a moment, looked queer, and said, “I’ll now tell you my business;” he then said he was dissatisfied. “You discover” said he, “that I am hard of hearing.” He then said, “he had heard there was a doctor, in Kentucky who could cure him, and he wanted to go and see him; that he wanted to ramble any how; and if he could find some good man to take care of his farm and negroes he would go and see this doctor in Kentucky, and he would ramble;” and proposed to witness to come and take care of his affairs for him. Witness said it did not suit him. Pettitt looked, strange while talking to witness on this subject; was silent for some little time, then said, “he was born in a fort, and reckoned he would die in a fort.” A few days before the date of the will, a female relation staid all night at his house. He had a newspaper in his hand when she went in; spoke twice to him without his noticing her. Witness put her hand on his head; he jumped up and apologized, and said, “I am glad to see you over here cousin Sally;” he then shoved her a chair and walked out of the house; was gone a minute; when he came back he commenced stirring the fire, and holding the tongs in his hands. He said, “Cousin Sally, I have given my pipe and tobacco to Sanders, and all the devils in hell can’t make me smoke again;” he looked strange when he said this, and he let the tongs fall on the hearth. Witness said, “why do you say that to me, cousin James,” and he said, “well I will just tell you, all the devils in hell can’t make me smoke again;” then speaking of another cousin, and his little daughter, he said, “when Frank comes we must have a dance;” and then jumping up, said, “see here, I can dance,” and kicked his feet together, adding “that he felt as if he was only sixteen years old.” Pettitt lay groaning the whole night, and slept none, and in the morning told witness that he had not had a good night’s sleep *193 for three weeks. A few days after, Frank and the girls did come down, and they had a dance, and Pettitt danced. Circumstances of strange and deep abstraction, in the conduct and manner of the deceased, when at the county village, a day or two before his death, are proved by several witnesses. We have selected this testimony from the record to show, that there was proof before the jury, upon which their verdict, against the validity of the alleged testamentary paper, may be rested. On the other hand, there is much testimony that tends to show that the deceased was of sound and disposing mind and memory. In such cases, where the Circuit Court has refused a new trial, the well settled and inflexible rule of this court is, to suffer the verdict to remain, where there is any testimony to sustain it, unless there be error in matters of law.
We think there is nothing erroneous in the charge of the court. It has been supposed that the court charged, that the fact of suicide was of itself complete evidence of insanity. There is nothing of this sort in the chai-ge. He told them to scan the history of the deceased, from the first acquaintance of the witness up to the date of the will; that the important question was, what was his mental condition about that time? Was he under the influence of delusion or not? Then they would enquire into his conduct up to the day of his death; and examine the circumstances of that catastrophe, “which they might take into consideration by way of ascertaining all about the condition of his mind.” Then he added, that the counsel had intimated that self-murder is of itself an evidence of insanity; and that this intimation was combatted with learning and ability by Seargent Hawkins; and then there is a digression about the law of forfeiture in England, and its abolishment by our constitution. And, then, in the close of the charge, the jury are instructed to take all the facts and circumstances together, and to judge for themselves. The error of the court, if any, was in giving too little, rather than too much weight, to that circumstance. A will prepared in view of suicide, and of course under the influence of the morbid and unhappy feelings leading to that catastrophe, must, where its validity is in question, be largely affected by that circumstance,
*194 Again it is said, that there was no proof shown to the county court, where the issue was made up, establishing the heirship of the caveators. We cannot tell how this was. No bill of exceptions was taken in the county court. The record only stating that the propounders do not admit the heirship. So the question discussed has not been raised by the record.
Upon the whole, we feel constrained, by what is shown in the record, and by the well settled doctrine of this court in cases of new trial, to affirm the verdict and judgment of the Circuit Court.